RECEIVED
DEC 19 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| ELIZABETH VANDERBERG, ET UX. | CIVIL ACTION NO. 12-0855 |
| -vs- | JUDGE DRELL |
| MURPHY OIL U.S.A., INC., ET AL. | MAGISTRATE JUDGE KIRK |

---

## RULING

Before the Court is a "Motion for Summary Judgment" filed by Defendants, Murphy Oil-U.S.A., Inc. ("Murphy Oil") and Liberty Mutual Fire Insurance Co. ("Liberty Mutual"). (Doc. 24). All responses have been filed, and the matter is ready for disposition. For the following reasons, Defendants' motion will be **DENIED**.

I.  Background

On March 18, 2011, Elizabeth Vanderberg was with her husband at the Murphy Oil gas station outside of the Wal-Mart in Pineville, LA to fill their vehicle. (Doc. 1-2 at 5; Doc. 24-3 at 19). The station has a concrete base, sixteen gas pumps, and a kiosk where customers can pay for gas and purchase small items such as drinks and snacks. (Doc. 24-5 at 2; Doc. 24-6 at 3–5). Mrs. Vanderberg alleges that when she was walking to the outdoor kiosk to pay before pumping her gas, she slipped and fell forward in a puddled mixture of oil and gas, landing on her knees and hands. (Doc. 1-2 at 5; Doc. 24-3 at 27–36). She claims she did not see the puddle before she fell. (Doc. 24-3 at 31). Mrs.

Vanderberg claims she sustained a patella fracture to her right knee as a result of the fall. (Doc. 1-2 at 6).

Mrs. Carol Wiley, another Murphy Oil customer at the time of the incident, did not witness the fall but did help Mrs. Vanderberg after she allegedly slipped. (Doc. 24-6 at 6–7). According to Mrs. Wiley's deposition testimony, she saw a 10-18 inch oil spill and "what appeared to be gasoline on the outside of that oil spill." (Doc. 24-6 at 7). Mrs. Wiley "could see that there was a line through the oil spill, like the heel of somebody's shoe, where she [referring to Mrs. Vanderberg] had slipped." (Doc. 24-6 at 7). Mrs. Wiley also noticed there was blood on Mrs. Vanderberg's knee and oil on her shoe. (Doc. 24-6 at 11). After Mrs. Vanderberg's fall, at Mrs. Wiley's insistence, two men helped her to her husband's vehicle. (Doc. 24-3 at 33; Doc. 24-6 at 7–8). Mrs. Wiley also informed the Murphy Oil employee on duty,[1] but as she was the only employee present at the Murphy Oil station (the other employee on duty was at the bank) she was not able to leave the kiosk to check on Mrs. Vanderberg after the accident. (Doc. 24-3 at 35). Mr. Vanderberg drove his wife to the hospital. (Doc. 24-4 at 2).

Tiffany Foster, one of the Murphy Oil employees on duty the day of Mrs. Vanderberg's accident, remembers picking up trash in the gas station lot between 6:30 and 7:00 A.M. that morning. (Doc. 24-5 at 13). However, she does not remember sweeping the entire parking lot before the accident. (Id. at 12). According to Ms. Foster, the Murphy Oil kiosk has a TV screen inside with a video feed from all of the pumps. (Id. at 2). Employees use the video feed to help customers figure out which gas pump they

---

[1] The record does not include the name of the employee at the kiosk when Mrs. Vanderberg's accident occurred. (Doc. 24-5 at 11).

are using, but are unable to constantly watch the video while tending to customers. (Id. at 3). Ms. Foster testified at her deposition that she viewed a surveillance video showing someone before the accident emptying an ice chest in the spot where Mrs. Vanderberg fell. (Id. at 16). Ms. Foster also testified that the surveillance footage she saw did not clearly depict Mrs. Vanderberg falling because there was a vehicle in front of her. (Id. at 14). Ms. Foster further explained that she observed Mrs. Vanderberg walk across the gas station, and the top of her head, and people running to her but she did not see her fall or exactly what she fell on in the video. (Id.). During her deposition, Ms. Foster stated that Mrs. Wiley showed her the spot where Mrs. Vanderberg fell. (Id. at 18). Ms. Foster described the spot as an older oil slick or oil spill that was about a foot and a half in diameter. (Id. at 16–17). According to her deposition, Ms. Foster testified that it looked like an old oil spot that had dried up like old oil spill in driveways, and that it was still wet when she saw it. (Id. at 15, 17, 19).

Mrs. Vanderberg and her husband filed a petition in the 9th Judicial District Court in Rapides Parish. Defendants Murphy Oil and its insurer Liberty Mutual properly removed to this court. Plaintiff's claims fall under the Louisiana Merchant Liability statute, La. R.S. 9:2800.6.

II. **Law & Analysis**

A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Louisiana Merchant Liability Statute

In diversity cases, federal courts must apply the substantive law of the state in which the federal court sits. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 206 (5th Cir. 2007)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Both parties agree that Louisiana's merchant liability "slip and fall" statute governs Plaintiffs' claim (Doc. 24-1 at 12; Doc. 26 at 1), and so do we. Defendant Murphy Oil meets the definition of a "merchant" under the statute.[2] Therefore Murphy Oil "owes a duty to persons who use [its] premises to exercise reasonable care to keep [its] aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). In their action against Murphy Oil, Plaintiffs have the burden of proving:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) [Murphy Oil] either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) [Murphy Oil] failed to exercise reasonable care.

---

[2] La. R.S. 9:2800.6(C)(2) reads: "'Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business." Defendants do not dispute Murphy Oil is a merchant within the meaning of the statute. (Doc. 24-1 at 13).

Id. at (B). To grant Defendants' Motion for Summary Judgment, the Defendants must show that there are no disputed material facts when viewed in the light most favorable to the Plaintiffs, such that Plaintiffs clearly cannot prove their case. If Defendants show that Plaintiffs are unable to prove a required element, then the burden shifts to the Plaintiffs to show there is a material factual dispute. To prevail, Plaintiffs must prove all three mandatory elements in La. R.S. 9:2800.6(B). White v. Wal-Mart Stores, Inc., 699 So. 2d 1081, 1084 (La. 1997).

First, there is a genuine factual dispute about whether the wet spot on the concrete created an unreasonable risk of harm. Multiple individuals, including third party witness Mrs. Wiley and Murphy Oil employee Ms. Foster, testified that they saw a large spot of wet concrete that may have oil or gas and water on the concrete ground of the gas station where Mrs. Vanderberg allegedly fell. (Doc. 24-6 at 7; Doc. 24-5 at 15–19). Whether this purportedly wet and oily spot on the ground created an unreasonable risk of harm that was reasonably foreseeable is a material issue of fact for the fact finder to determine.

Next, there is also a genuine factual dispute about whether Murphy Oil's employees had constructive notice of the condition. In Louisiana, "the plaintiff must come forward with 'positive evidence' to show the condition existed for some period of time and such time was sufficient to place the merchant defendant on notice of its existence." Carter v. Zurich America Ins. Co., 2012 WL 702270, at *1 (M.D. La. Mar. 1, 2012) (citing White v. Wal-Mart, Inc., 699 So. 2d 1081 (La. 1997)). When a plaintiff can produce "some evidence" of a temporal element, Louisiana courts generally deny

summary judgment because "the question of whether the period of time is sufficiently lengthy that the merchant should have discovered is necessarily a fact question." Id. (citing White, 699 So. 2d at 1084).

In Blackman v. Brookshire Grocery Co., the Louisiana Third Circuit held the lower court correctly denied summary judgment because the plaintiffs presented positive evidence showing a broken spaghetti sauce jar was on the floor of a grocery store for at least three minutes before the slip and fall. 966 So. 2d 1185, 1189–91 (La. App. 3d Cir. 2007). Similarly, in Carter, a Federal Court in the Middle District of Louisiana found the plaintiff presented positive evidence showing a sizable water puddle in a store aisle where two employees were standing for at least 20–25 seconds before she fell. 2012 WL 702270, at *1.

In this case at bar, both parties have stipulated that surveillance video shows a vehicle releasing water on to the concrete around approximately 10:04 A.M. on March 18, 2011. (See Doc. 24-9, Compact Disk; Doc. 30 at 5). Another surveillance video partially shows Mrs. Vanderberg's alleged fall around approximately 10:30 A.M. on the same day. (Doc. 24-9, Compact Disk). A third video shows a large wet and possibly oily spot on the ground where Mrs. Vanderberg allegedly fell. (Id.). The recorded twenty-six minute time period between the release of the water and Mrs. Vanderberg's slip and fall is positive evidence that the condition existed for some time before the accident. Because there is evidence that the condition existed for a period of time, it is a question for trier of fact to decide whether the time was sufficiently lengthy that a Murphy Oil employee should have discovered the potential danger.

Finally, there is a factual dispute about whether Murphy Oil and its employees exercised reasonable care under the circumstances. There is deposition testimony from Ms. Foster regarding the maintenance procedures of Murphy Oil's employees, but in their joint pre-trial stipulations, parties state that whether employees "walk the station's parking lot at least twice daily, and dust the parking lot every other day or every third day to absorb any spills on the pavement." (Doc. 24-5; Doc. 30 at 6).

> In evaluating the reasonableness of the protective measures employed by a merchant, this court has considered the following factors to be viewed in light of the circumstances present in each case: the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space used for customer service, the volume of business, the time of day, [and] the section of the premises[.]

Barton v. Wal-Mart Stores, Inc., 704 So. 2d 361, 364 (La. App. 3d Cir. 1997) (internal quotations omitted). It is the province of the fact finder to evaluate the above factors and determine reasonableness. We will not preclude the fact finder's function when there are genuine disputes of material fact inherent in the consideration of the above factors.

### III. Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment will be **DENIED**.

SIGNED on this 19th day of December, 2013 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT